IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STEVEN L. BALDWIN,
     Petitioner,

vs.                             Case No.: 5:15cv18/RH/EMT

JULIE L. JONES,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 19).  Petitioner filed a reply (ECF No. 22).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 19).[1]  Petitioner was charged by an amended information filed in the Circuit Court in and for Bay County, Florida, Case No. 2009-CF-1262, with one count of fleeing or attempting to elude a marked police car (Count I), one count of aggravated battery (Count II), one count of carjacking (Count III), one count of aggravated assault (Count IV), and one count of carrying a concealed firearm during the commission of a felony (Count V) (Ex. A at 134–35).  Following a jury trial, Petitioner was found not guilty of Counts I and III, and guilty as charged of Counts II, IV, and V (Ex. A at 165–67, Ex. C).  On May 19, 2010, Petitioner was sentenced as a prison releasee reoffender, and pursuant to Florida's "10-20-life" statute, to fifty (50) years in prison on Count II and a concurrent term of fifteen (15) years in prison on Count IV, with pre-sentence jail credit of 384 days (Ex. A at 174–80, Ex. B).  The court did not adjudicate Petitioner as to Count V (carrying a concealed firearm during the commission of a felony) (Ex. C at 183).  On December 23, 2010, Petitioner filed a motion to correct illegal sentence, pursuant to Rule

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 19).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. F at 299–304). The court granted resentencing as to Count IV (*id.* at 307–08), and resentenced Petitioner on April 13, 2011, to five (5) years in prison (instead of fifteen (15) years) on Count IV (*id.* at 309–16, 322–57).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D10-2772 (Ex. G). On February 27, 2012, the First DCA reversed and remanded the case as to Count II only for the trial court to correct a scrivener's error by entering a corrected judgment and sentence reflecting that Petitioner was adjudicated guilty of aggravated battery with a deadly weapon (instead of aggravated battery with great bodily harm) (Ex. I). The First DCA otherwise affirmed the judgment and sentences (*id.*). The mandate issued March 14, 2012 (*id.*). <u>Baldwin v. State</u>, 80 So. 3d 456 (Fla. 1st DCA 2012) (Mem).

On March 27, 2012, Petitioner filed a motion to correct illegal sentence in the trial court, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. J at 5–14). In an order rendered April 16, 2012, the trial court ordered the clerk of court to correct the judgment in accordance with the First DCA's decision (*id.* at 16). On May 23, 2012, Petitioner filed a notice of appeal (*id.* at 30). The First DCA assigned Case No. 1D12-2701, and dismissed the appeal on July 6, 2012 (Ex. K). (Ex.

L at 1–10).  The state circuit court summarily denied the Rule 3.800(a) motion on

September 5, 2012 (*id.* at 141–43).  Petitioner appealed the decision to the First DCA,

Case No. 1D12-4711 (Ex. L at 195).  The First DCA affirmed the decision per curiam

without written opinion on December 3, 2012, with the mandate issuing January 29,

2013 (Exs. M, P).  Baldwin v. State, 104 So. 3d 1089 (Fla. 1st DCA 2012) (Table).

On August 5, 2012, Petitioner filed a motion for post-conviction relief, pursuant

to Rule 3.850 of the Florida Rules of Criminal Procedure, raising fourteen claims (Ex.

S at 1–26).  In an order rendered October 8, 2012, the state circuit court struck the

motion as facially insufficient, without prejudice to Petitioner's filing an amended

motion within thirty (30) days (*id.* at 35).  Petitioner filed an amended motion on

October 14, 2012 (*id.* at 36–67).  The state circuit court denied the motion in part as

to all but one claim (Ground 4) and directed the State to respond to that claim (*id.* at

73–87).  Petitioner filed a "supplement," adding four additional claims (Grounds

15–18) (Ex. T at 219–63).  The state circuit court denied the additional four claims

and set an evidentiary hearing on Ground 4 (*id.* at 273–79).  Petitioner then filed a

second "supplement," adding two additional claims (Grounds 19 and 20) (Ex. U at

332–86).  The court appointed counsel to represent Petitioner (*id.* at 407–08).  The

State filed a response to Grounds 4, 19 and 20 (*id.* at 423–518).  The circuit court

denied Grounds 4, 19, and 20 in an order rendered June 19, 2013 (*id.* at 564–71).

Petitioner appealed the decision to the First DCA, Case No. 1D13-4011. The First

DCA affirmed the decision per curiam without written opinion on February 6, 2014,

with the mandate issuing March 4, 2014 (Ex. W). Baldwin v. State, 132 So. 3d 224

(Fla. 1st DCA 2014) (Table).

On October 23, 2012, during the pendency of the Rule 3.850 proceeding,

Petitioner filed another Rule 3.800(a) motion in the state circuit court (Ex. Q at 1–11).

The state circuit court summarily denied the motion on February 14, 2013 (*id.* at

48–51). Petitioner appealed the decision to the First DCA, Case No. 1D13-2416 (*id.*

at 115). The First DCA affirmed the decision per curiam without written opinion on

October 17, 2013, with the mandate issuing November 13, 2013 (Ex. R). Baldwin v.

State, 123 So. 3d 562 (Fla. 1st DCA 2013) (Table).

On October 30, 2013, Petitioner filed another Rule 3.800(a) motion (Ex. X at

1–12). He subsequently filed an amended motion (*id.* at 139–55). The state circuit

summarily denied the motion in an order rendered June 16, 2014 (Ex. Y at 232–37).

Petitioner appealed the decision to the First DCA, Case No. 1D14-2960 (*id.* at 287).

The First DCA affirmed the decision per curiam without written opinion on

September 26, 2014, with the mandate issuing October 22, 2014 (Ex. Z). <u>Baldwin v. State</u>, 149 So. 3d 1 (Fla. 1st DCA 2014) (Table).

On October 10, 2014, Petitioner filed a second Rule 3.850 motion in the state circuit court (Ex. AA at 1–15). The court summarily denied the motion in an order rendered November 7, 2014 (*id.* at 63–66). Petitioner appealed the decision to the First DCA, Case No. 1D14-5769 (*id.* at 114). The First DCA affirmed the decision per curiam without written opinion on March 17, 2015, with the mandate issuing April 14, 2015 (Ex. BB). <u>Baldwin v. State</u>, 160 So. 3d 410 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on February 6, 2015 (ECF No. 1).

## II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In

relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review

in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The

appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved

_____

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  "Clearly established Federal law, includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions." Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (citation omitted).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court

applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  However, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at

411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d

624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state

court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291

(citing Richter).  Under § 2254(d), a habeas court must determine what arguments or

theories supported or could have supported the state court's decision, and then ask

whether it is possible that fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of the Supreme Court.

*See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court

may rely on grounds other than those articulated by the state court in determining that

habeas relief was not warranted, so long as the district court did not err in concluding

that the state court's rejection of the petitioner's claims was neither an unreasonable

application of a Supreme Court holding nor an unreasonable determination of the

facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the

merits in State court where that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified

that: "a decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See

<u>Gill</u>, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied § 2254(d) does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

## III.   PETITIONER'S CLAIMS

A.    <u>Ground One</u>:  <u>"The state court denied Petitioner's motion for postconviction relief by an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court's decision in Strickland v. Washington and contrary to federal law that is clearly established in the holding of this court's reamendment [sic] to Florida Rules of Civil and Criminal Procedure, Jury Instructions 976 So. 2d 178; thereby denying the Petitioner his Sixth Amendment right to effective assistance of counsel when counsel waived juror's questioning and note-taking rights.  The result has denied the Petitioner his right to a fair trial; due process of law as to the 4th, 5th, 6th and 14th Amendment rights [sic]; and fundamental error."</u>

Petitioner claims that his trial counsel was ineffective for waiving, without consultation or consent, Petitioner's "right" to have the jurors take notes and ask

questions during trial (ECF No. 1 at 9–12). Petitioner alleges that the waiver denied the jurors' ability to recall facts, which would have assisted them in weighing the evidence during deliberations, and prevented them from comparing the evidence adduced at trial. Petitioner contends that if the jurors had been permitted to take notes and ask questions during trial, there is a reasonable probability that they would have found him not guilty or guilty of lesser included offenses.

Respondent contends that although Petitioner exhausted his claim with respect to trial counsel's waiving the jurors' taking notes during trial, Petitioner did not present the state courts with his claim with respect to asking questions (ECF No. 19 at 23–30). Respondent argues that the state court's adjudication of the ineffective assistance of trial counsel ("IATC") claim with respect to juror note-taking is entitled to deference. Respondent contends that notwithstanding Petitioner's failure to exhaust the IATC claim with respect to juror questions during trial, the claim is without merit.

In reply, Petitioner argues that he raised both aspects of his IATC claim in Ground Seventeen of his Rule 3.850 motion (ECF No. 22 at 2–3). Petitioner contends that the state circuit court failed to address the "question-asking" aspect of the claim in its written decision; however, the state court's failure to address it does not render it unexhausted.

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did

not present—were acts that some lawyer might do." <u>Jones</u>, 436 F.3d at 1293 (citing

<u>Chandler</u>, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable

lawyers would not have done as defense counsel did at trial, no relief can be granted

on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the

circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir.

1994).  Counsel's performance is deficient only if it is "outside the wide range of

professional competence." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Strickland</u>, 466 U.S. at

690); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that

petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute

rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d

1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317).  Indeed,

"'[a]bsolute rules would interfere with counsel's independence—which is also

constitutionally protected—and would restrict the wide latitude counsel have in

making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th

Cir. 2001)).

     As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of

demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th

Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the

defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on

appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting <u>Strickland</u>'s high bar is never an easy task."  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult."  <u>Richter</u>, 131 S. Ct. at 788.  As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

> 2.     Federal Review of State Court Decision

Review of the state court record demonstrates that Petitioner raised both aspects of Ground One in Ground Seventeen of his Rule 3.850 motion (Ex. T at 258–60). In the state circuit court's written decision denying the claim, the court correctly identified the deficient performance and prejudice prongs of the Strickland standard (*id.* at 274). The court adjudicated the claim as follows:

In Ground Seventeen, the Defendant alleges that counsel was ineffective for waiving the juror's right to take notes. After opening statements, the court asked counsel and the prosecutor whether it was okay not to provide note pads for taking notes. Defense counsel agreed that they would not receive pads and waived any objection. The Defendant asserts that, later in the proceeding, a juror asked to take notes, but the Court told her that they should just listen carefully to the evidence. The Defendant asserts that counsel performed deficiently by waiving any objection to this, and this waiver denied him the right to a fair trial. He claims that the jurors were denied the right to compare witness testimony and other evidence and could not be expected to totally recall the evidence. Further, the Defendant asserts that he should have been consulted before defense counsel made this decision. The Defendant states that he was prejudiced because he was denied the right to a fair trial and a "better informed jury."

The Defendant's claim is without merit. "It is within the *sound discretion of the trial court* to determine whether a jury may take notes." *See Mendoza v. State*, 964 So. 2d 121 (Fla. 2007) (emphasis added). Even if counsel had conferred with the Defendant and wanted the jurors to take notes, the court would not have been bound by the Defendant's request. Thus, counsel is not ineffective for failing to consult the Defendant prior to waiving any objections to the jurors not taking notes. In any case, the Defendant has not alleged sufficient prejudice under *Strickland*. While the Defendant asserts that he was denied a fair trial and a better informed jury, the Defendant does not have a right to a jury

that takes notes.  Further, the actual trial spanned a single day and included only five witnesses and five exhibits.  (*See* Trial Tr. at 2–3.) Therefore, the Defendant cannot demonstrate that, had the jury taken notes, there is a reasonable  probability that the outcome of the trial would have been different.  *See Franqui v. State*, 59 So. 3d 82, 96 (Fla. 2011); *see also Kennedy v. State*, 547 So. 2d 912 (Fla. 1989) (conclusory and speculative allegations are insufficient to warrant an evidentiary hearing).  Accordingly, Ground Seventeen is denied.

(Ex. T at 277).  The First DCA affirmed the lower court's decision without written opinion (Ex. W).

When a federal claim has been presented to the state court, and the state court opinion addresses some but not all of defendant's federal claims, a rebuttable presumption arises on federal habeas review that state court adjudicated all of the federal claims on the merits.  *See* Johnson v. Williams, — U.S. —, 133 S. Ct. 1088, 1094, 185 L. Ed. 2d 105 (2013).  Here, Petitioner has not rebutted the presumption that the First DCA adjudicated the merits of both aspects of his IATC claim (juror note-taking and juror question-asking); therefore, to obtain federal habeas relief, Petitioner must satisfy § 2254(d).[3]  *See* Richter, 562 U.S. at 100.

---

[3] Because the First DCA's decision in the Rule 3.850 proceeding was the last state court adjudication of the merits of the federal claim, it is that adjudication that is reviewed under § 2254(d).  *See* Hittson v. GDCP Warden, 759 F.3d 1210, 1231 (11th Cir. 2014) (citing Newland v. Hall, 527 F.3d 1162, 1198–99 (11th Cir. 2008)).

The transcript of Petitioner's trial shows that prior to the presentation of

evidence, the court held a side-bar conference with counsel:

> THE COURT:  . . . [W]e did not talk about jury notes, okay.  If I
> don't tell them about questions nor give them note pads, is that okay not
> to?

> MR. HUSBANDS [defense counsel]:  Yes.

> THE COURT:  You wave [sic] it?

> MR. HUSBANDS:  Yes.

> THE COURT:  Okay.  All right, very good.

> MS. RODGER [the prosecutor]:  That's fine with the State.

(Ex. C at 15).  After the State presented testimony from its first witness, a juror

inquired of the court whether the jurors could take notes.  The court responded:

> No, ma'am.  We would have to give you pads.  I don't think you
> will need that at this point because we'd rather you just listen carefully
> and the case won't be that long, so I think you will probably be okay.
> The lawyers will remind you what was said on closing.

(Ex. C at 38–39).  The juror responded, "Okay." (*id.* at 39).  The trial evidence

consisted of testimony from five witnesses and the introduction of five exhibits (two

of the exhibits were composites, so the total number of exhibits was eleven) (*see* Ex.

B at 139, Ex. C).  The taking of evidence lasted less than two-and-one-half (2 ½)

hours  (*see* Ex. B at 136–38).  The jury deliberated for approximately one (1) hour (*see id.*).

Initially, Petitioner has cited no legal authority for his contention that the decision whether to permit the jury to take notes or ask questions of witnesses during trial is a decision that counsel may not waive except upon consultation with, and consent of, the defendant.  Further, both Florida and federal courts have held that the decision whether to allow juror questioning and note-taking is within the discretion of the trial court.  *See* United States v. Richardson, 233 F.3d 1285, 1288–89 (11th Cir. 2000) (citing cases) (decision whether to allow juror questioning rests within the discretion of the trial judge); Mendoza v. State, 964 So. 2d 121, 134 (Fla. 2007) (citation omitted) (note-taking is within sound discretion of trial court); Ferrara v. State, 101 So. 2d 797, 801 (Fla. 1958) (citations omitted) (propounding of questions by trier of fact is within sound discretion of trial court).

Moreover, even if defense counsel had consulted with Petitioner, and requested that the court permit juror note-taking and questions, Petitioner failed to show a reasonable probability that the outcome of trial would have been different.  Petitioner's trial was brief, the issues and evidence were straightforward, and the volume of evidence was small.  With regard to the juror's questioning of witnesses,

there is no indication that any juror was confused by any of the evidence, or would have asked a question even if the trial court had instructed them that they were permitted to do so.  With regard to note-taking, although one juror inquired as to whether the jurors were permitted to take notes, this question does not suggest that either that juror or any other juror had difficulty retaining the trial testimony, or that note-taking was otherwise necessary for the jury to weigh the evidence and assess whether it established Petitioner's guilt beyond a reasonable doubt.

Petitioner failed to demonstrate that the state court's rejection of his IATC claim was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal habeas relief on Ground One.

> B.    <u>Ground Two:   "The state court denial of Petitioner's motion for postconviction relief was based on an unreasonable determination of the facts in light of the record before the state court thereby denying the Petitioner his Sixth Amendment right to effective assistance of counsel as determined by the U.S. Supreme Court's decision in Strickland v. Washington, when counsel failed to object and move for a curative instruction or mistrial to [sic] prosecutor's improper argument.  The result has denied the Petitioner his right to a fair trial and due process of law as of the 4th, 5th, and 14th United States Constitutional Amendments."</u>

Petitioner claims that defense counsel was ineffective for failing to object to the following remarks by the prosecutor during closing arguments:

> We have proven beyond a reasonable doubt Steven Baldwin Lopez shot at Charles McIntosh, that he car-jacked Charles McIntosh, that he

> assaulted with a firearm Karen King, and that he's the person in that
> video taking off in front of the officer.  Because there's no time, from the
> time of the shooting to the time when he comes in contact with Officer
> Hernandez that anybody else could have gotten in that car and taken
> over.  What would be the point?  Why would somebody else want to run
> from the cops if they didn't steal a car at gunpoint?  Who has the motive
> to run from a police officer?  Somebody who just committed a
> car-jacking and assaulted two people with a firearm, hitting one of them.
> I submit to you, ladies and gentlemen, the State has met their burden and
> that man at that table is guilty of all five counts on the Information.

(ECF No. 1 at 14–17).  Petitioner argues that defense counsel should have objected

to the remarks on the ground that they improperly bolstered the State's case, asked the

jury to make inferences from the evidence, undermined his defense, and alleged his

guilt before the jury had an opportunity to deliberate.  Petitioner alleges if counsel had

objected and requested curative instructions and a mistrial, the trial court would have

granted the request, and the jury may have acquitted him of all charges.

Respondent concedes that Petitioner exhausted this claim by presenting it in his

Rule 3.850 motion (ECF No. 19 at 30).  Respondent contends the state court's

adjudication of the claim is entitled to deference (*id.* at 31–34).

      1.     Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

      2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Sixteen in his Rule 3.850 motion (Ex.

T at 255–57).  The state circuit court correctly cited the <u>Strickland</u> standard as the

applicable legal standard (*id.* at 274).  The court adjudicated the claim as follows:

> In Ground Sixteen, the Defendant alleges that counsel was ineffective for failing to object to and move for a curative instruction or mistrial after the prosecutor's improper argument.  He claims that the prosecutor's statements improperly bolstered the case, alleged the Defendant's guilt before the jury had time to assess the case, undermined the Defendant's defense, and "asks the jury to infer upon the case."  Had counsel objected to these comments or requested a curative instruction or mistrial, the Defendant alleges that the court would have been obligated to grant his request and the Defendant may have been found not guilty beyond a reasonable doubt or guilty of a lesser included offense.
>
> The excerpt that the Defendant alleges was improper bolstering of the State's case occurred during the rebuttal argument of the prosecutor. (*See* Trial Tr. at 153–154.)  The comments made by the prosecutor were not improper, as they were fair comments upon the evidence presented at trial.  *See Valentine v. State*, 98 So. 3d 44, 55–57 (Fla. 2012); *Hill v. State*, 515 So. 2d 176 (Fla. 1987) (noting that closing arguments are meant to aid the jury in applying the evidence to the applicable law).  The Defendant alleges no valid reason why such statements were improper.  Attorneys are given wide latitude in their arguments, but they must confine their comments to the evidence produce [sic] at trial and all logical deductions therefrom.  *See Smith v. State*, 7 So. 3d 473 (Fla. 2009); *Ruiz v. State*, 743 So. 2d 1 (Fla. 1999).  The State was simply mentioning the evidence present [sic] during the trial and providing the jury with logical deductions made from the evidence. Thus, counsel was not ineffective for failing to object and request a curative instruction or mistrial.  Ground Sixteen is denied."

(Ex. T at 276–77).  The First DCA affirmed the lower court's decision without written

opinion (Ex. W).

Under Florida law, the standard for reviewing prosecutorial comments is the following:

> Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted). A prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See* Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper. *Id.* at 1507. Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence. *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; she may comment on the evidence and express the conclusions she contends the jury should draw from the evidence.  United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury.  *See* White v. State, 377 So. 2d 1149 (Fla. 1980). Additionally, prosecutorial comment upon a general lack of defense evidence is permissible.  *See* Smiley v. State, 395 So. 2d 235 (Fla. 1st DCA 1981).

Attempts to bolster a witness by vouching for his or her credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility."  United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)).  A jury could believe that the prosecutor personally believed in the witness' credibility "if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony."  *Id.* (citation omitted).  Thus, the court must examine whether (1) the prosecutor explicitly personally assured the witness' credibility, or (2)

the prosecutor implicitly vouched for the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony.  United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing Sims, 719 F.2d at 377).

However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury."  United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991).  Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper.  United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).  Likewise, a prosecutor may reply to remarks, comments or assertions made by defense counsel.  See United States v. Young, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed.2 d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law."  Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair.  *See* Eyster, 948 F.2d at 1206 (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987); Dessaure v. State, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

Upon review of the evidence adduced at trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments (Ex. C), the undersigned concludes—as did the state courts—that the prosecutor's remarks were

not improper.  Therefore, Petitioner failed to show that defense counsel's failure to

object to the comments constituted deficient performance, or that there is a reasonable

probability the outcome of trial would have been different if counsel had objected and

requested a curative instruction, or moved for a mistrial, or both.  Therefore, the state

court's adjudication of Petitioner's claim was not an unreasonable application of

Strickland.

> C.    Ground Three:    "The state court denied Petitioner's motion for
> postconviction relief by an unreasonable application of clearly established
> federal law as determined by the U.S. Supreme Court's decision in Strickland
> v. Washington, thereby denying the Petitioner his 6th Amendment right to
> effective assistance of counsel failed [sic] to object and move for acquittal as
> to jury instruction failure [sic] to follow mirror image of charging information.
> Also was [sic] based on an unreasonable determination of the facts in light of
> the record before the state court.  The result has denied the Petitioner his right
> to a fair trial and due process of law; caused a fundamental error as of the 4th,
> 5th, and 14th United States Constitutional Amendments."

Petitioner contends defense counsel was ineffective for failing to object to the

jury instruction on aggravated battery, on the ground that it failed to include language

identical to the language in the amended information (ECF No. 1 at 19–24).  Petitioner

alleges the amended information charged him with actually and intentionally touching

or striking Charles McIntosh against his will, but the jury instruction instructed the

jury that the State was required to prove that he intentionally caused bodily harm to

Charles McIntosh.  Petitioner argues that Florida law provides that aggravated battery

may be committed in two ways, either actually and intentionally touching or striking another person against his will, or intentionally causing bodily harm to another person. Petitioner alleges the instruction permitted the jury to convict him of an uncharged crime. Petitioner argues that because of defense counsel's failure to object, he was convicted of an uncharged offense, and the issue was not preserved for appellate review.

Respondent concedes that Petitioner exhausted this claim (ECF No. 19 at 35). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 35–40).

> 1.     Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

> 2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Nineteen in his Rule 3.850 motion (Ex. U at 332–86). The state circuit court adjudicated the claim as follows:

> In Ground Nineteen, the Defendant alleges that counsel was ineffective for failing to object or move for acquittal based on the fact that the jury instructions failed to mirror the language contained in the information.[FN 3: It should be noted that the Defendant has already attacked the validity of the aggravated battery jury instruction in his prior supplemental motion for post conviction relief, but focused on the "deadly weapon" element instead of the method in which the underlying battery was committed.] Specifically, the Defendant raises an issue with

the Court's instruction on aggravated battery, alleging that the instruction required the jury to find that he "intentionally caused bodily harm" while the information alleged that he did "actually and intentionally touch or strike" the victim.  The Defendant points out that the information charged the "actually and intentionally touch or strike" element of battery and not the "intentionally caused bodily harm" element.  He asserts that the State's evidence was that he shot the victim in the leg and caused him bodily harm by the use of a firearm.  He argues that in order to prove the "actually and intentionally touch or strike" version of battery, the State would have had to prove that the victim was physically touched by the Defendant's hands or by the Defendant hitting the victim with the firearm.  The Defendant argues that, due to counsel's error in failing to object, the State did not meet their burden by establishing the charged element of the crime and the jury was allowed to convict based on an uncharged version of battery. The Defendant asserts that had counsel objected, the jury would have acquitted him or at least the objection would have been preserved for appeal.

The standard jury instruction for aggravated battery provides as follows:

> **To prove the crime of Aggravated Battery, the State must prove the following two elements beyond a reasonable doubt.  The first element is a definition of battery.**
>
> **1.**    (Defendant)
>
> **[intentionally touched or struck** (victim) **against [his] [her] will].**
> **[intentionally caused bodily harm to** (victim)**].**
>
> *Give 2a or 2b as applicable.*
> **2.**    (Defendant) **in committing the battery**
>
> **a.    intentionally or knowingly caused**

> [**great bodily harm to** (victim)]**.**
> [**permanent disability to** (victim)]**.**
> [**permanent disfigurement to** (victim)]**.**

>    b.      **used a deadly weapon.**

> *Definition.    Give if 2b alleged.*
> **A weapon is a "deadly weapon" if it is used or threatened to be used in a way likely to produce death or great bodily harm.**

Fla. Std. Jury Instr. (Crim.) 8.4.

It appears that the trial court did instruct the jury on the "bodily harm" battery rather than the "intentional touching" battery that was charged in the information. However, assuming for the sake of argument that defense counsel was ineffective for failing to object to the erroneous jury instruction, the Defendant would still have to prove prejudice resulted from his attorney's failure to object. When considering an erroneous jury instruction, the general rule is that "if the totality of the circumstances indicates there is no reasonable possibility an alleged jury instruction error contributed to the verdict, the error is not fundamental." *See Croom v. State*, 36 So. 3d 707 (Fla. 1st DCA 2010). Furthermore, "[f]ailing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error . . . ." *Garzon v. State*, 980 So. 2d 1038 (Fla. 2008) (quoting *Stewart v. State*, 420 So. 2d 862, 863 (Fla. 1982)). Thus, it follows that counsel's failure to object to the instruction could have prejudiced the Defendant only if there is a reasonable probability that the jury would not have convicted the Defendant if given the proper instruction. As discussed below, the State presented ample evidence to convict the Defendant under either theory of battery. Thus, the Defendant cannot demonstrate that he was prejudiced by counsel's failure to object to the instruction.

While the Defendant argues that the State did not have to prove beyond a reasonable doubt that the Defendant actually and intentionally

touched or struck the victim as alleged in the information, the State provided sufficient evidence for the jury to convict the Defendant under either theory of battery.   Karen King testified that the Defendant threatened her by pointing a gun at her head, and she subsequently witnessed the Defendant shooting at Charles McIntosh.  (*See* Trial Tr. at 40–42; 49–50.)  Sonya Shannon also testified that the Defendant pointed a gun at her sister Karen, and shortly after the confrontation with her sister, she heard gunshots.  *Id.* at 57–60.  As she was leaving the scene in her vehicle, Ms. Shannon picked up Charles McIntosh, who was limping down the road after being shot in the leg.  *Id.* at 6l.  The victim of the aggravated battery, Charles McIntosh, testified that the Defendant tapped on his car window with a gun and forced him out of his car.  *Id.* at 17.  As the victim ran away, the Defendant pointed his gun and started shooting at him.  *Id.* at 19.  The victim was hit in the upper thigh and was taken to Bay Medical for his injuries.  *Id.* at 19–20. The State introduced several photographs of the victim's gunshot wound, which consisted of two holes in his leg.  *Id.* at 20–23.  The victim also testified that he had a permanent scar from the incident, and that he occasionally suffers pain from the injury.  *Id.* at 103–05. Detective Mike Brewer testified that he made contact with the victim at the emergency room, where he was being treated for a gunshot wound to his leg.  *Id.* at 82.  The victim was taken to the police station, where he immediately identified the Defendant as the perpetrator.  *Id.* at 88–89. The Defendant's assertion that the State must prove that he physically touched the victim with his hands or otherwise directly struck the victim with the firearm is not a correct statement of law.  *See, e.g., Clark v. State*, 783 So. 2d 967 (Fla. 2001) (evidence that the defendant intentionally collided with another occupied vehicle was sufficient to create a jury question regarding aggravated battery with a deadly weapon); *Nash v. State*, 766 So. 2d 310 (Fla. 4th DCA 2000) (touching the victim's purse without making contact with her person was a battery).  There is nothing in the statute that requires direct person to person contact.  *See* § 784.045, Fla. Stat.

Regardless of whether the jury instruction provided the "intentionally causing bodily harm" element or the "intentionally touch or strike" element, this case does not involve any lack of evidence that

the Defendant either intentionally caused bodily harm or intentionally struck the victim, when he deliberately shot the victim with a firearm and caused a bullet to strike and enter the victim's leg.  Further, there was no dispute regarding the extent of the victim's injuries and the cause of such injuries (i.e. a gun shot wound). The State points out that it is inherent in the jury's findings that they determined the Defendant "intentionally touched or struck the victim against his will," where they made a special finding that the Defendant had discharged a firearm and "intentionally or knowingly caused great bodily harm to Charles McIntosh."  (*See* Verdict.)  Thus, even if trial counsel had objected to the jury instruction and required the "intentionally touch or strike" element to be read to the jury, there is not a reasonable probability that the Defendant would have been acquitted based upon the evidence at trial.  As the Defendant cannot demonstrate any prejudice resulting from counsel's failure to object to the instruction, this claim is due to be denied.

(Ex. U at 567–69).  The First DCA affirmed the lower court's decision without written

opinion (Ex. W).

The amended information charged Petitioner with Count II as follows:

COUNT II:  Steven Lopez Baldwin on or about April 30, 2009, in the County of BAY and State of Florida, did actually and intentionally touch or strike Charles Eugene McIntosh against the will of Charles Eugene McIntosh, and in doing so Steven Lopez Baldwin intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement to Charles Eugene McIntosh, and during the commission of the aggravated battery, Steven Lopez Baldwin used a firearm and Steven Lopez Baldwin did in fact discharge a firearm and, as the result of the discharge great bodily harm was inflicted upon Charles Eugene McIntosh contrary contrary [sic] to Florida Statutes 784.045(l)(a)1 and 2; 775.087(1)(b) and 775.087(2)(a)3 and (3). (1 DEG FEL)

(Ex. U at 574).

The statute identified in the amended information, Florida Statutes § 784.045(1)(a)1, provides that "a person commits aggravated battery who, in committing battery . . . intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; . . ."  Florida law defines battery as occurring when a person (1) actually and intentionally touches or strikes another person against the will of the other, or (2) intentionally causes bodily harm to another person.  *See* Fla. Stat. § 784.03(1)(a).

With regard to Count II, the court instructed the jury as follows:

> As to Count II, To prove the crime of Aggravated Battery, the State must prove the following two elements beyond a reasonable doubt. The first element is a definition of battery.
>
> 1. Steven Lopez Baldwin intentionally caused bodily harm to Charles Eugene McIntosh.
>
> 2. Steven Lopez Baldwin in committing the battery intentionally or knowingly caused great bodily harm or permanent disfigurement to Charles Eugene McIntosh.
>
> If you find that Steven Lopez Baldwin committed Aggravated Battery and you also find that during the commission of the crime he carried or used a firearm, you should find him guilty of Aggravated Battery with a Firearm.
> . . . .
> If you find only that Steven Lopez Baldwin committed Aggravated Battery, but did not carry or use a firearm, than you should only find him guilty of Aggravated Battery.

(Ex. A at 142).  The verdict reflects the following findings by the jury as to Count II: (1) Petitioner was guilty as charged of aggravated battery, (2) Petitioner actually possessed a firearm, (3) Petitioner discharged the firearm, and (4) as a result of the discharge of the firearm, great bodily harm was inflicted upon Charles McIntosh (*id.* at 165–66).

The state courts reasonably concluded that Petitioner suffered no prejudice from counsel's failure to object to the jury instruction on the ground that it instructed the jury that it could convict Petitioner based upon a theory not charged in the charging document.  Although Petitioner argues he was not charged with intentionally causing bodily harm, the amended information charged that he touched or struck Charles Eugene McIntosh against his will, and in doing so Petitioner "intentionally or knowingly caused great bodily harm."

Moreover, deferring to the state court's determination that the State was not required to prove that Petitioner physically touched Charles McIntosh with his hands or otherwise directly struck Mr. McIntosh with the firearm, *see* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (federal habeas court must abide by state court's interpretation of state law), there was ample evidence that Petitioner intentionally caused bodily harm and actually and intentionally struck

Charles McIntosh against his will.  Karen King testified that Petitioner threatened her by pointing a gun at her head and then she witnessed Petitioner shooting at Charles McIntosh (Ex. C at 40–42, 49–50).  Sonya Shannon testified that Petitioner pointed a gun at her sister Karen, and shortly after that confrontation, she heard gunshots (*id.* at 57–60).  Ms. Shannon testified that as she was leaving the scene in her vehicle, she picked up Mr. McIntosh, who was limping down the road after being shot in the leg (*id.* at 61).  Charles McIntosh testified that Petitioner tapped on his window with a gun and forced him out of his car (*id.* at 17–19). He testified that as he ran away, Petitioner pointed his gun and started shooting at him (*id.* at 19).  Mr. McIntosh testified that he was hit in the upper thigh and was taken to the Bay Medical Center for his injuries (*id.* at 19–22).  Mr. McIntosh identified Petitioner in court as the man who shot him. Detective Mike Brewer testified that when Mr. McIntosh was taken to the police station after receiving treatment for the gunshot wound, McIntosh immediately identified Petitioner as the perpetrator in a photo lineup (*id.* at 80–89).

Further, as the state court found, there was no dispute regarding the extent of Mr. McIntosh's injuries and the cause of those injuries (i.e. a gun shot wound), and the jury made specific findings that Petitioner actually possessed a firearm, he discharged the firearm, and, as a result of the discharge, great bodily harm was

inflicted upon Charles McIntosh (Ex. B at 165–66), which was an inherent determination that Petitioner intentionally touched or struck Mr. McIntosh against his will as charged in the amended information.

The state court did not unreasonably apply <u>Strickland</u> in denying Petitioner's IATC claim regarding counsel's failure to object to the jury instruction on aggravated battery.  *See, e.g.,* <u>Perrot v. Sec'y, Fla. Dep't of Corr.</u>, 480 F. App'x 978, 982–83 (11th Cir. 2012) (unpublished but recognized as persuasive authority) (sexual battery defendant's counsel was not ineffective for failure to object to instruction allowing jury to consider use of either deadly weapon or actual force; though information charged only use of deadly weapon, it referenced statute that also proscribed use of actual force, such that prosecutor could have responded to any objection by amending information and, in any event, there was ample evidence that defendant had used deadly weapon).  Therefore, Petitioner is not entitled to federal habeas relief on Ground Three.

> D.   <u>Ground Four:   "The state court denied Petitioner's motion for postconviction relief by an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court's decision in Strickland v. Washington, thereby denying the Petitioner his 6th Amendment right to effective assistance of counsel when counsel failed to move for curative instructions and mistrial following prosecutor improper [sic] attempt to add credibility to State's witnesses."</u>

Petitioner claims that defense counsel was ineffective for failing to request a curative instruction and a mistrial when the trial court overruled counsel's objection to the following remarks by the prosecutor during closing arguments:

> The witnesses, the Judge will tell you, their testimony, their credibility is up to each and every individual juror to decide who to believe and who to disbelieve. You saw each girl on the stand, you saw Charles on the stand. They came in here and they testified truthfully and they each identified Steven Lopez Baldwin in the courtroom today—.

(ECF No. 1 at 26–28). Petitioner contends that even though defense counsel objected to this remark, and the objection was overruled, counsel should have requested a curative instruction and moved for a mistrial. Petitioner alleges if counsel had requested a curative instruction and moved for a mistrial, the trial court would have granted the requests, and the jury may have acquitted him of all charges.

Respondent concedes that Petitioner exhausted this claim by presenting it in his Rule 3.850 motion (ECF No. 19 at 41). Respondent contends the state court's adjudication of the claim is entitled to deference (*id.* at 41–44).

1.    Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 10 in his Rule 3.850 motion (Ex. S at 55–57).  The state circuit court adjudicated the claim as follows:

> In Ground Ten, the Defendant alleges that counsel was ineffective for failing to move for a curative instruction and mistrial following the State's improper attempt to bolster the credibility of its own witnesses. The Defendant asserts that the State improperly commented on the truthfulness of the witnesses during closing arguments. (Tr. at 151.) While the Defendant admits that trial counsel objected to the comment, the Court overruled his objection.  However, the Defendant maintains that counsel was ineffective for failing to move for a curative instruction and move for a mistrial.  He argues that the Court would have been bound by judicial precedent to grant this request.  Had counsel done so, the Defendant asserts that he may not have been found guilty.
>
> This claim is without merit.  Trial counsel objected to the State's bolstering of its witnesses, and the Court overruled the objection.  (*See* Trial Tr. at 151.)  The First DCA reviewed the trial court's ruling on the Defendant's objection and per curiam affirmed the Court's decision. (*See* Defendant's Initial Brief; *see also* Mandate and Opinion.)  Because the Court properly overruled counsel's objection, any request for a curative instruction or a mistrial would have been pointless.  *See Harris v. State*, 34 So. 3d 187, 190 (Fla. 1st DCA 2010).  In any case, for a mistrial to be granted due to improper closing, "the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict that it would have otherwise."  *Spencer v. State*, 645 So. 2d 337 (Fla. 1994).  In this case, the complained of comment was made during the State's rebuttal to the Defendant's closing, wherein defense counsel argued that the State witnesses were lying.  (Tr. at 148–149.)  In addition, just prior to the complained of comment, the prosecutor stated that "[t]he witnesses, the Judge will tell you) their testimony, their credibility is up to each and every individual juror to decide who to believe and who to disbelieve." (Tr. at 151.)

Furthermore, this was an isolated comment that was not recurrent throughout the State's closing argument.  (Tr. at 135–141; 149–154.) Taking the prosecutor's comment in context of the whole closing argument, the Defendant has not demonstrated that it was so inflammatory and prejudicial that it vitiated the entire trial.  *See Jackson v. State*, 89 So. 3d 1011, 1019 (Fla. 4th DCA 2012) ("a prosecutor may robustly and vigorously argue the truthfulness of a witness whose credibility is under attack"); *Yak v. State*, 891 So. 2d 602 (Fla. 1st DCA 2005) (holding that the isolated comment of the prosecutor that the victim was "honest and straightforward" was not improper).

As the Court overruled defense counsel's objection to the comment, the Defendant has not demonstrated how counsel was ineffective for subsequently failing to move for a curative instruction or mistrial.  Such a request would have most likely been denied, based on the trial court's determination that the comment was innocuous.  Further, the complained of comment was not so pervasive or prejudicial that it prevented the jury from rationally considering the evidence.  In fact, the isolated comment did [not] bolster the witnesses by placing the prestige of the government behind them, and instead the prosecutor simply urged the jury to find that the witnesses credibly testified.  The Defendant has not demonstrated prejudice under *Strickland*.  Accordingly, Ground Ten is denied.

(Ex. S at 82).  The First DCA affirmed the lower court's decision without written

opinion (Ex. W).

The state court reasonably concluded that Petitioner failed to demonstrate

prejudice.  In light of the trial court's overruling defense counsel's objection to the

prosecutor's remark, thus concluding that the remark was not improper, there is no

reasonable probability that the trial court would have properly granted a request for

a curative instruction or a motion for mistrial had defense counsel made one.

Therefore, Petitioner is not entitled to federal habeas relief on Ground Four.

> E.  Ground Five: "The state court denied Petitioner's motion for postconviction relief by an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court's decision in Strickland v. Washington, thereby denying the Petitioner his Sixth Amendment right to effective assistance of counsel, and was based [sic] on an unreasonable determination of the facts in light of the record before the state court when counsel failed to object to trial court dismissal [sic] of a juror and not move [sic] for mistrial.  The result has denied the Petitioner his right to a fair trial and due process of law of the 4th and 14teenth [sic] Amendments under United States Constitutions [sic]."

Petitioner claims that defense counsel was ineffective for failing to object to the trial court's removal of Juror Black prior to deliberations (ECF No. 1 at 30–33). Petitioner argues that counsel should have objected on three grounds:  (1) the removal was based upon hearsay and rumor; (2) the alleged basis for removal occurred after jury selection but prior to the commencement of trial, therefore, the State should have raised the issue sooner; and (3) the removal deprived Petitioner of his right to be tried by a fair cross-section of his peers, because Juror Black was the only African-American juror.  Petitioner alleges there is a reasonable probability that the outcome of trial would have been different if defense counsel had objected and moved for a mistrial.

Respondent concedes Petitioner exhausted this claim (ECF No. 19 at 45).

Respondent contends the state court's adjudication of the claim was not contrary to

or an unreasonable application of clearly established federal law (*id.* at 45–49).

       1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

       2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 11 in his Rule 3.850 motion (Ex. S at

57–59).  The state circuit court adjudicated the claim as follows:

> In Ground Eleven, the Defendant alleges that counsel was
> ineffective for failing to object to the Court's dismissal of a juror and
> failing to move for a mistrial.  The Defendant alleges that the judge
> dismissed Juror Black just prior to deliberation because the juror had
> spoken to coworkers about the case. Ms. Smith, an assistant state
> attorney, informed the judge that she had received a text message from
> her cousin, who worked with Juror Black.  The Defendant argues that the
> judge did not investigate into the credibility of Ms. Smith's allegations,
> did not view the true content of the text, and instead relied solely on
> hearsay in dismissing this juror.  The Defendant states that his attorney
> should have objected to the removal of the juror to preserve this issue for
> appellate review.  The Defendant alleges that he was prejudiced in not
> having a jury made up of a true cross-section of the community, because
> Juror Black happened to be the only African American juror.  The
> Defendant maintains that, because his attorney failed to object and move
> for a mistrial, he was denied the right to have a fair cross-section of his
> peers as juror [sic].
>
> After the State and Defense had rested their cases, assistant state
> attorney Tracy Smith informed the judge in front of the other prosecutors

and trial counsel that her cousin works with Juror Black at the Paper Mill.  She was informed that Juror Black had spoken to his co-workers about the case and had stated that he would not be able to convict the Defendant in this case.  The Court conducted a colloquy with the juror, and he admitted that he told his co-workers that he was selected for jury duty but did not express any intentions regarding his vote.  He stated that his co-workers "made some speculations but that's all it is.  Just them running their mouth."  (Tr. at 123.)  In addition, he acknowledged that they appeared to know what the case was about.  (Tr. at 124.)  The Court indicated that this was not a high profile case and there had not been any news stories published about this case.  (Tr. at 126–27.)  The State and the judge both expressed concerns over the fact that there was a conversation between this juror and his co-workers, and his co-workers had knowledge of the facts of this unreported case.  The Court stated that she was also concerned that the juror listened to his co-workers['] comments and did not make a report of the conversation to anyone.  (Tr. at 127–28.)  After closing arguments, the Court readdressed the issue, and trial counsel stated that "I want him on there." (Tr. at 155.)  Defense counsel argued that Juror Black could not control the comments that may have been made to him at work.  *Id.*  However, the Court was concerned that a long conversation had taken place where the juror had listened and considered these comments.  *Id.*  The Court stated that the Defendant did not have a right to a particular juror, and Juror Black clearly had a conversation with his co-workers about the case.  The Court then decided that the alternate would take the place of Juror Black.

The Defendant has not demonstrated ineffective assistance of counsel under *Strickland*.  First, counsel attempted to keep Juror Black on the jury.  However, after the juror had admitted to conversations with co-workers, there was little argument to be made concerning his retention.  Although the Defendant argues that the dismissal was based solely on hearsay from the Assistant State Attorney's cousin, the juror himself admitted to having conversations.  While he did not admit that he voiced an opinion about the case or his intention regarding his vote, the Court was within its authority to dismiss the juror for failing to abide by the Court's instruction to not discuss the case with any person.

> Moreover, [the] juror's explanation indicated that his discussions may
> have been more substantial, since his co-workers were somehow aware
> of facts that were not reported in the media.  The Court was obviously
> concerned about these discussions influencing his decision during
> deliberation. (Tr. at 127–28.)  The Defendant has not demonstrated how
> his counsel's objection to the dismissal of Juror Black or request for a
> mistrial would have resulted in a different outcome, as the Court acted
> within its discretion to dismiss the juror.  *See Doyle v. State*, 460 So. 2d
> 353 (Fla. 1984) ("Dealing with the conduct of jurors is likewise left to
> the sound discretion of the court.")  Furthermore, this issue was raised
> on appeal and therefore is procedurally barred.  (*See* Defendant's Initial
> Brief at 17–21; State's Answer Brief at 19–24.)  Thus, the Defendant has
> not demonstrated that his attorney was ineffective or that he was
> prejudiced by the dismissal of this juror.  Accordingly, Ground Eleven
> is denied.

(Ex. S at 83–84).  The First DCA affirmed the lower court's decision without written

opinion (Ex. W).

The trial transcript shows that after a lunch recess on the day of trial, April 28,

2010, and after the State and the defense had rested their cases, Assistant State

Attorney Tracy Smith reported the following to the court and counsel for both parties:

> I received a text from my cousin that works at Smurfit-Stone
> Container, the Paper Mill, I believe that's where juror number one
> works, as well.  He told me that although he did not actually here [sic]
> this, himself, several of his co-workers had reported to him that juror
> number one had talked about the case yesterday, not only talked about
> the details of the case but talked about that he would not want to, he
> would not be able, or would not convict this Defendant, that he would
> not be able to find him guilty as charged or would refuse to find him
> guilty as charged.  I do not know the, I don't want to put words in his

mouth, Judge, but what I got from the conversation was that no matter
what the evidence was that he would not vote guilty.

(Ex. C at 121).  With the parties' agreement, the court called Juror Elijah Black into

the courtroom to inquire whether he had talked to anyone at the paper mill about the

case (*id.* at 121–22).  The judge asked Juror Black if he had gone to work on Monday,

April 26, 2010, after the jury had been picked for Petitioner's case (*id.* at 122).  Juror

Black responded no, but stated he went to work "yesterday," meaning April 27, 2010

(Petitioner's trial was held on April 28, 2010) (*id.*).  In response to the court's

questions, Juror Black stated that he had told people at work that he was on jury duty,

but he did not talk about the case at all, nor express any opinion about what he might

do on the case (*id.* at 122–24).  Juror Black told the court that his co-workers "made

some speculations" (*id.* at 123).  The court inquired as to what he meant by that:

> THE COURT:  What do you mean they made some speculations?
>
> JUROR BLACK:  They said you are on case, oh, my gosh, you
> gonna do this, you gonna do that.  I didn't say anything to them.
>
> THE COURT:  What did they say to you?
>
> JUROR BLACK:  They said, well, are you—they asked me a few
> questions about it, you know, but I didn't tell them anything.
>
> THE COURT:  Okay.  Did you answer their questions at all?
>
> JUROR BLACK:  No.

THE COURT:  You told them what the case was though?

JUROR BLACK:  No, I just told them I was on the case.

THE COURT:  They obviously knew something or they wouldn't have—

JUROR BLACK:  They knew something, yeah.

THE COURT:  How would they know that, do you know?

JUROR BLACK:  Just guess, I guess.

THE COURT:  Because I don't think there was any news reports about it, were there?

JUROR BLACK:  No, not that I know of.

THE COURT:  Okay.  But they, you got the idea they knew what the case was about?

JUROR BLACK:  Yeah.
. . . .
THE COURT:  Were they close friends of yours?

JUROR BLACK:  No, they ain't [sic] friends of mine, just work with them, we associate with each other with work.

THE COURT:  Okay.  But you didn't tell them anything about what you were planning to do or not do or–

JUROR BLACK:  No.  No.

THE COURT:  —or say anything, but you listened to their talk?

> JUROR BLACK:  Yeah, I listened to their talk and comments and stuff.

(*id.* at 123–24).  Defense counsel asked Juror Black whether the area of the paper mill where he worked was "real loud" (*id.* at 125).  Juror Black responded yes (*id.*).  After Juror Black left the courtroom, defense counsel argued that Juror Black should not be removed, because he stated under oath that he did not talk about the case (*id.* at 126).  The trial judge expressed concern that there was no publicity about the case, yet Juror Black's co-workers knew the specific case he was serving on (*id.*).  The judge also expressed concern that Juror Black admitted that he listened to co-workers' comments about what he may do or may not do on the case (*id.* at 127).  Assistant State Attorney Smith told the court that she did not know the exact words, but the gist of the conversation was that he (Juror Black) would not convict a black man (*id.*).  The discussion continued:

> THE COURT:  And that's what I am concerned about because I don't know what he said, and I don't know who, what people he was talking to, or if race had anything to do with it, but he is, Mr. Black is also an African-American, and so I don't understand why anybody at the Paper Mill would know anything about the case because there's no other connection at the Paper Mill to the case since it was not in the news media of any sort that I have seen.  Everybody agrees to that?
>
> MS. RODGER [a prosecutor]:  I agree.
>
> MR. HUSBANDS [defense counsel]:  I didn't see any.

THE COURT:  Okay.  And it's not a high profile case by any means, and I don't know how those people there would know that there was a case involving a black man unless he told them.  I am also concerned with the fact he apparently listened to whatever it is they were joking around about and didn't report it to anyone.

. . . .

THE COURT:  Let me think about it during the closing arguments, and we can decide.  We haven't told the jury who the alternate is, so if necessary we can put it in [sic] the alternate and excuse Mr. Black.  You don't have particular right to any one juror, if there's any question about his impartiality, and I am concerned about him listening to a [sic], even at his own comment, him listening to lots of joking about the case, or suggestions about what he was going to do and what he wasn't going to do.  Whether he answered him or not I don't think is the issue here.  So I will think about it and we will decide between now and the time we sends [sic] the jury out, because we will take another break before that time, and I will let you make any further argument you wish at that point.

MR. HUSBANDS:  I am going to say that a big place like that, supervisor and all must have known he was on a jury and—

THE COURT:  It's not the fact he's on jury duty.  It's the fact they were making comments about what he was going to do and he listened to that and didn't report it to anyone, and he stood around and didn't say I can't talk about it and left.  That's not what he said.  He said I listened to them.  That concerns me.  But I will make a final ruling before we send the jury out . . . .

(*id.* at 127–29).

After closing arguments, and outside the presence of the jury, the prosecutor

requested that Juror Black be excused (Ex. C at 154).  Defense counsel argued:

MR. HUSBANDS:  I want him on there, Your Honor.  What supposedly he did, we don't have anybody saying he did it.

THE COURT:  Except him.

MR. HUSBANDS:  Okay.  He, I mean if somebody says something to you and you are around them, you don't have any control.  You can walk away but if it's said it's said.

THE COURT:  Right.  He told me that all these, lots of these people were running their mouth and telling him things he was going to do, which implies to me that he's having a long discussion and he's listening to it, and based on the fact that kind of corroborates what the cousin of the assistant state attorney said, not the specifics of it, I think that's grounds enough.  I don't think you have any right to a particular juror and there is an alternate, although he's kind of falling asleep but I think he's roused himself toward the end.  He was off again, on again sleeping during parts of the closing [arguments].

(Ex. C at 155).  After the court instructed the jury, the court notified Juror Black that he was the alternate juror, and that he would not participate in deliberations (*id.* at 177).

Initially, Petitioner's assertion that defense counsel failed to object to Mr. Black's removal is refuted by the record.  The record shows that defense counsel argued that Mr. Black should remain on the jury.  Further, Petitioner's alleged grounds for objection are meritless.  Petitioner's assertion that the State was aware of Mr. Black's conduct prior to the commencement of trial is factually unsupported.  The record suggests that the State first became aware of the conduct during the lunch

recess, after all of the evidence had been presented.  Additionally, the record refutes

Petitioner's argument that the removal of Mr. Black was based upon rumor and

hearsay.  Mr. Black admitted that he was present when co-workers were discussing

the case and speculating as to whether he would find Petitioner guilty, and Mr. Black

admitted that he listened to the discussions.

Petitioner's "fair cross-section" argument also would have been unavailing.

In Duren v. Missouri, the Supreme Court articulated a three-part standard for

establishing a prima facie violation of the Sixth Amendment's fair-cross-section

requirement.  439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979).  The

proponent must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the
> community; (2) that the representation of this group in venires from
> which juries are selected is not fair and reasonable in relation to the
> number of such persons in the community; and (3) that this
> underrepresentation is due to systematic exclusion of the group in the
> jury-selection process.

Id.  Here, Petitioner failed to show that the second or third prongs were satisfied, that

is, that the representation of African Americans in venires from which juries were

selected was not fair and reasonable in relation to the number of such persons in the

community, and that such under-representation was due to systematic exclusion of

that group in the jury-selection process or that the selection process provided an

opportunity for discrimination.  Therefore, Petitioner failed to show that defense counsel had a meritorious basis for objecting to Juror Black's removal on the ground that doing so deprived Petitioner of his right to be tried by a fair cross-section of the community.

The state courts reasonably concluded that Petitioner failed to show that he was prejudiced by defense counsel's failure to object and move for a mistrial with respect to Juror Black's removal.  Therefore, he is not entitled to federal habeas relief on Ground Five.

> F.    Ground Six:   "The state court denied Petitioner's motion for postconviction relief by an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court's decision in Strickland v. Washington, thereby denying the Petitioner his Sixth Amendment right to effective assistance of counsel when counsel failed to move for curative instructions or mistrial following objection to prosecutorial improper argument and conduct.  The result has denied the Petitioner his right to a fair trial and due process of law, violating his Fourth, Fifth and Fourteenth United States Constitutional Amendments [sic]."

Petitioner claims that defense counsel was ineffective for failing to move for a curative instruction and mistrial when the prosecutor discussed Juror Black with her cousin during a recess and then argued for Juror Black's removal based upon the information she obtained from her cousin (ECF No. 1 at 35–38).  Petitioner alleges defense counsel should have objected when the prosecutor informed the court of the

text message she received from her cousin, on the ground that the prosecutor engaged in misconduct by discussing the case outside of trial.   Petitioner alleges defense counsel should have moved for a mistrial when the court substituted Juror Black, who had been attentive throughout the trial, with a juror who slept throughout the trial. Petitioner argues that he was prejudiced by counsel's failure to request a curative instruction and mistrial, because Petitioner "lost a juror who could have altered the outcome of the trial."

Respondent concedes that Petitioner exhausted this claim by presenting it in his Rule 3.850 motion (ECF No. 19 at 50).   Respondent contends the state court's adjudication of the claim is entitled to deference (*id.* at 50–54).

### 1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

### 2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 12 in his Rule 3.850 motion (Ex. S at 59–61).  The state circuit court adjudicated the claim as follows:

> In Ground Twelve, the Defendant alleges that counsel was ineffective for failing to move for a curative instruction or mistrial following his objection to improper prosecutorial argument and conduct. The Defendant alleges that the prosecutor who had outside communication with her cousin acted unethically.   He argues that counsel should have moved for a "curative admonishing" and a mistrial.

He further alleges that Juror Black was replaced with a juror that had slept through most of the trial.  The Defendant argues that trial counsel should have known to seek a mistrial when the Court relied on the prosecutor's misconduct of discussing the case with her relative as a basis for dismissing Juror Black.  Had counsel moved for a curative instruction and a mistrial, the Defendant would not have lost a juror who could have altered the outcome of his trial.

The prosecutor is not prohibited from discussing a case with another outside the presence of the jury and may bring matters to the attention of the Court that affect the juror's ability to remain impartial.  *See, e.g.*, Chester v. State, 737 So. 2d 557 (Fla. 3d DCA 1999).  The charge given to the jury applies only to conversations that they may have during their service.  Secondly, the purpose of a curative instruction is to prevent the jury from considering certain evidence or argument that was improperly presented to them.  This discussion concerning the prosecutor's cousin did not take place in the presence of the jury, and consequently there was no reason for a curative instruction.  Further, the Defendant has not demonstrated that defense counsel had any basis for requesting a mistrial.  As discussed above, regulating the conduct of the jurors is left to the discretion of the court.  *See Doyle*, 460 So. 2d at 357.  Considering the analysis in Ground Eleven, the Court's dismissal of Juror Black was necessary, as he admitted to having outside conversations and listening to comments made by co-workers about what he would do as a juror.  The juror's admissions were buttressed by Ms. Smith's conversation with her cousin.  "[T]he power to declare a mistrial and discharge the jury should be exercised with great care and caution and should be done only in cases of absolute necessity."  *See Thomas v. State*, 748 So. 2d 970, 980 (Fla. 1999); *see also Tai A. Pham v. State*, 70 So. 2d 485 (Fla. 2011) ("A mistrial should only be granted when an error is so prejudicial that it vitiates the entire trial.").  In this case, the removal of Juror Black did not require a mistrial, as there was an alternate juror available.  *See, e.g., Wilson v. State*, 608 So 2d 842, 843 (Fla. 3d DCA 1992).  While the Defendant argues that his jury was not made up of a fair cross-section of the community, this claim is barred as it should have

been raised on appeal. *See Bates v. State*, 3 So. 3d 1091, 1104 (Fla. 2009).

Further, the Defendant argues that he did not receive a fair trial as the alternate juror slept through most of the trial. While the Defendant discusses this issue only in passing, and does not allege sufficient prejudice resulting from this replacement. However, in the interest of conclusiveness, this Court will address the issue. This issue was first presented during the State's rebuttal argument. (Tr. at 151). After an objection by defense counsel regarding certain comments by the prosecutor, the Court noted that the last juror appeared to be falling asleep. She instructed that the attorney's [sic] make noise if they notice it. (Tr. at 151.) Later, this issue was discussed after the Court had determined to excuse Juror Black. The Court determined that it was not a constant problem during the trial and that the juror was "fine in the morning" and "fine through most of the closing arguments." (Tr. at 155–56.) However, he appeared to "doze off a bit, but it didn't last very long," and he straightened up once defense counsel made the objection to the State's rebuttal. (Tr. at 156.) The Defendant has not demonstrated that he was prejudiced based on the alternate juror's drowsiness during a part of the closing arguments to the point that the outcome of the trial would have been different. Instead, the matter was addressed by the Court along with the State and defense counsel. *See Reynolds v. State*, 99 So. 3d 459, 480 (Fla. 2012) (holding that, if the issue regarding a sleeping juror is discussed, no reversible error is presented). The Court had the authority to dismiss a potentially biased juror for outside conversations and replace him with the alternate juror. While the alternate was dozing off during closing argument, the Court indicated that it did not last very long and that the juror was attentive through the presentation of the evidence that morning. In addition, as mentioned above, this issue was raised on appeal and therefore appears to be procedurally barred. In any case, the Defendant has not demonstrated that counsel was ineffective for failing to request a curative instruction or mistrial based on these events, nor has he demonstrated prejudice to the extent that the outcome of the trial would have been different. Accordingly, Ground Twelve is denied.

(Ex. S at 84–85).  The First DCA affirmed the lower court's decision without written opinion (Ex. W).

The trial transcript supports the state court's finding that all of the discussions regarding the removal of Juror Black were conducted outside the presence of the jury. Therefore, counsel had no meritorious basis to request a curative instruction.

Additionally, Petitioner failed to show that counsel had a meritorious basis for a motion for mistrial.  It was not improper for the prosecutor to report information she had received suggesting that a juror was not impartial and had violated the court's instruction not to engage in discussions about the case.  Therefore, defense counsel had no meritorious basis for moving for a mistrial based upon the prosecutor's unsolicited receipt of information about one of the jurors from an outside source. With regard to the juror who replaced Juror Black during deliberations, the record supports the state court's finding that although there was evidence that the replacement juror was dozing off, the judge indicated that the juror was attentive through the presentation of the evidence during the morning session, and appeared to doze off only momentarily during the prosecutor's rebuttal argument during the afternoon session.

Petitioner failed to demonstrate that the state court unreasonably applied Strickland in rejecting this IATC claim.  Therefore, he is not entitled to federal habeas relief on Ground Six.

> G.    Ground Seven:   "The state court denied Petitioner's motion for postconviction relief by an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court's decision in Strickland v. Washington, thereby denying the Petitioner his Sixth Amendment right to effective assistance of counsel when counsel elicited damaging testimony. The result has denied the Petitioner his right to a fair trial and due process of law as to Fifth and Fourteenth Amendment rights of the United States Constitution."

Petitioner claims that defense counsel was ineffective for eliciting damaging testimony on cross-examination of Karen King, specifically, testimony that she saw Petitioner shoot Charles McIntosh (ECF No. 1 at 40–43).  Petitioner alleges he may have been acquitted of the aggravated battery charge if counsel had not elicited this testimony.

Respondent concedes that Petitioner exhausted this claim by presenting it in his Rule 3.850 motion (ECF No. 19 at 54).  Respondent contends the state court's adjudication of the claim is entitled to deference (*id.* at 55–57).

1.    Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Eighteen in his Rule 3.850 motion (Ex.

T at 261–63).  The state circuit court adjudicated the claim as follows:

> In Ground Eighteen, the Defendant alleges that counsel was
> ineffective for eliciting damaging testimony.  More specifically, the
> Defendant asserts that during cross-examination of Karen King, defense
> counsel asked the witness whether she saw the Defendant shoot the
> victim, Charles McIntosh.  While the witness did not give a definitive
> answer during cross, the Defendant argues that this opened the door for
> the State to ask on redirect whether the witness saw the Defendant shoot
> the victim, and she answered that she saw the Defendant shoot Mr.
> McIntosh.  Thus, because counsel prompted this damaging testimony by
> opening the door for the prosecutor to ask this question, the Defendant
> asserts that this was deficient performance on the part of counsel.  He
> claims that the State never asked this question on direct examination.
> Had counsel not elicited such testimony on cross, the Defendant asserts
> that he would have been acquitted because the jury would have been free
> to assume that he was not the perpetrator.

> The Defendant's claim is without merit.   During direct
> examination, the victim testified that she "heard him fire a shotgun go
> [sic] off," and again testified that she heard three or four gunshots
> immediately after the Defendant had threatened her with a gun.  (Tr. at
> 41–42.)  Defense counsel asked during cross-examination "And you did
> not see this man shoot Mr. McIntosh, did you?"  (Tr. at 50.)  The
> Defendant [sic] responded that "I seen him walk across the street and
> when Mr. Charles had ran had shot him."  *Id.*  When asked again, she
> responded "I had seen him walk across the street and with the gun and
> when I had looked up Mr.—I seen Mr. Charles run and he was firing a
> gun, seen him."  *Id.*  Afterward, the State attempted to clarify that Ms.
> King had witnessed the entire event.  (Tr. at 54).

> Counsel was not ineffective for eliciting damaging testimony from
> this witness.  On direct examination, the witness simply stated that she
> "heard" gunshots as she was trying to get away from the Defendant.

> Based on her answers on direct, counsel was not ineffective for
> suggesting that the witness did not actually see the Defendant shoot Mr.
> McIntosh and certainly cannot be deficient based on a witness's
> unexpected answer considering her prior testimony.  In any case, the
> Defendant was not prejudiced by this, since the victim of the aggravated
> battery, Mr. McIntosh, specifically identified the Defendant as the
> perpetrator. (Tr. at 17–19.)  Therefore, even if counsel had not elicited
> this unexpected testimony from the witness, the victim himself provided
> testimony to identify the Defendant as the perpetrator of the crime.
> Thus, the Defendant was not prejudiced, and Ground Eighteen is denied.
> *Cf. Collins v. State*, 855 So. 2d 1160 (Fla. 1st DCA 2003) (holding an
> evidentiary hearing was necessary where defense counsel elicited
> identification testimony from a detective which had not been elicited by
> the State and where the victims could not positively identify the
> perpetrator).

(Ex. T at 277–78).  The First DCA affirmed the lower court's decision without written

opinion (Ex. W).

The trial transcript confirms the state court's findings of fact with respect to the

questioning and testimony of Karen King.  On direct examination, Ms. King testified

that Petitioner put a gun to her left temple and asked her where his girlfriend was (Ex.

C at 39–41).  Ms. King testified that she eventually told Petitioner that his girlfriend

was "over there" and pointed across the street (*id.* at 41).  Ms. King testified that

Petitioner went in the direction she had pointed (*id.* at 42).  The prosecutor asked Ms.

King what she did next, and Ms. King responded:

> Um, I get up [sic] and I was fixing [sic] to go to my sister's car, I
> was looking to see where he was going, and I was going to go to my

sister's car but I turned around to see where he was going and I looked across the street and I turned back around and I heard him fire a shotgun go [sic] off and I started to get in my car, so I had to get in my car to get away because I thought he was coming back over there to me.

Q [by the prosecutor].  You heard a gunshot, how many gunshots did you hear?

A.  It was like three or four.

(Ex. C at 42).

Defense counsel inquired on cross-examination:

Q.  And when you left the club the first time you heard gunshots?

A.  When I was at club first [sic], yes, I did.

Q.  And you did not see this man shoot at Mr. McIntosh, did you?

A.  I seen him walk across the street and when Mr. Charles had ran had [sic] shot him.

Q.  And that's all?

THE COURT:  Can you speak up?  You are talking too quiet.  We are really having a hard time hearing you.  Can you please speak a little louder.  Sounds like you are whispering.  Thanks.  Okay, Mr. Husbands.

MR. HUSBANDS:  What was my last question?

THE COURT REPORTER:  "And you did not see this man shoot at Mr. McIntosh, did you?"

BY MR. HUSBANDS:

Q.  You did not see Mr. Baldwin shoot at Mr. McIntosh?

A.  I had seen him walk across the street—

Q.  Walk across the street?

A.—and with the gun and when I had looked up Mr.—I seen Mr. Charles run and he was firing a gun, seen him.

(Ex. C at 50).

On re-direct examination, the prosecutor asked Ms. King whether she could see Petitioner shooting the gun (Ex. C at 54).  Ms. King responded yes (*id.*).

Charles McIntosh identified Petitioner in court as the man who shot him (Ex. C at 18).  He testified that he also identified Petitioner in a photographic line-up at the police station after he was released from the hospital for treatment of the gunshot wound (*id.* at 23–26).  Mr. McIntosh testified that he was "a hundred percent positive" in his identifications, both in court and at the police station (*id.* at 36).

In light of Mr. McIntosh's unequivocal identification of Petitioner as the man who shot him in the leg, the state court reasonably concluded that Petitioner failed to show a reasonable probability that the outcome of trial would have been different if defense counsel had not elicited testimony from Ms. King that she saw Petitioner shoot Mr. McIntosh.  Therefore, Petitioner is not entitled to relief on Ground Seven.

H.     Ground Eight:   "The state court denied Petitioner's motion for postconviction relief by an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court's decision in Strickland v. Washington, thereby denying the Petitioner his Sixth Amendment right to effective assistance of counsel when counsel failed to inform Defendant of applicable law.  The result has denied the Petitioner his right to a fair trial due [sic] process of law as to the Fourth, Sixth and Fourteenth Amendment rights [sic]."

Petitioner alleges that on May 19, 2010, defense counsel conveyed a plea offer of a sentence of ten (10) years in prison if Petitioner entered a plea to the charges (ECF No. 1 at 45–46).  Petitioner alleges that in conveying the plea offer, defense counsel failed to inform him "of the applicable law of the 10-20-Life statute" (*id.*). Petitioner alleges he rejected the plea offer (*id.*).  He alleges after he was found guilty at trial, he was sentenced to fifty (50) years (*id.*).  Petitioner alleges that defense counsel's failure to inform him of the applicability of the 10-20-Life statute caused him to receive a harsher sentence than the 10-year plea offer (*id.*).  He alleges if counsel had properly advised him, he would have been in a better position to understand his options and "might" have accepted the plea offer (*id.*).

Respondent concedes that Petitioner exhausted this claim by presenting it in his Rule 3.850 motion (ECF No. 19 at 58).  Respondent contends the state court's adjudication of the claim is entitled to deference (*id.* at 58–61).

1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner presented this claim to the state courts in Ground 4 of his Rule 3.850

motion (Ex. S at 44–45).  The entirety of his claim was the following:

> On March 19, 2010, counsel relayed a plea offer that called for a sentence of ten (10) years incarceration.  In relaying the plea counsel failed to inform Defendant of the applicable law of the 10-20-Life statute.  Defendant rejected the <u>proposed offer</u> and proceeded to trial.  After being found guilty Defendant was given an enhanced sentence of fifty (50) years for aggravated battery with deadly weapon, five (5) years for aggravated assault with deadly weapon.  In imposing said sentence, the State suggested that the sentence was under the 10-20-Life statute, and the trial court agreed.

> <u>Argument</u>: Counsel's failure to inform Defendant of the applicable law of the 10-20-Life statute caused Defendant to receive a harsher sentence than <u>proposed</u> by the State.  Had counsel properly advised Defendant he would have been in a better position to understand his options.  He might have accepted the plea offer thereby avoiding the harsher penalty or punishment.  "For there to be a genuinely voluntary and knowing decision Defendant must possess an understanding of the applicable law in relation to the facts and, it is the function of counsel to provide such an understanding and appreciation."

> <u>Deficient Performance of Counsel</u>:  As to the above facts demonstrate [sic], counsel was deficient and the deficiency caused Defendant to receive a harsher sentence.  Had Defendant been advised of the applicable law to the 10-20-Life statute, he would have received a less severe sentence.

> <u>Prejudice resulting from counsel [sic] deficiency</u>:  As to the above facts show [sic] counsel was deficient and his deficient performance

prejudiced Defendant causing him to receive a more severe sentence. Had counsel properly advised Defendant there is a reasonable probability of a different result. Defendant should have been allowed to choose the plea rather than trial and face the harsher penalty.

Wherefore, based upon the foregoing facts and conclusions of law Defendant should be afforded an opportunity to accept the State's plea offer of a less severe sentence. Alternatively, Defendant asks that his conviction and sentence is reversed and remand[ed] and he is afforded an opportunity to change his plea of not guilty and allowed to accept the State's offer.

(Ex. S at 44–45) (emphasis added). In the Rule 3.850 proceeding, the State responded to Ground 4 by arguing that Petitioner's allegation that he "might" have accepted the State's plea offer was legally insufficient to show his entitlement to relief (Ex. T at 266). Petitioner filed a reply, definitively stating that if counsel had advised him that application of the 10-20-life statute would result in a sentence more severe than the State's 10-year plea offer, he would have accepted the State's offer (*id.* at 268–72).

The state circuit court adjudicated the claim as follows:

Although this Court previously set an evidentiary hearing on this ground, the recent State response alerted the Court to record evidence that refutes the Defendant's allegations. Specifically, the Defendant asserts in his amended motion that trial counsel conveyed a plea offer from the State for ten (10) years in prison but did not advise him of the applicability of the 10-20-Life law to his case. After being convicted, the Defendant was sentenced to an enhanced sentence under the law of fifty (50) years in prison for aggravated battery with a deadly weapon. The Defendant alleges that counsel's failure caused him to received [sic] a harsher sentence than proposed by the State. Had his attorney properly

advised him of the applicability of the law, "he would have been in a better position to understand his options." He also asserts that he "might have accepted the plea offer, thereby avoiding the harsher penalty or punishment." However, in his reply to the State's response, the Defendant maintains that he would without a doubt have accepted the State's plea offer of ten (10) years if he had been advised of "the 10-20-Life statute being a harsher sentence then [sic] the State's proposed plea agreement of (10) years that is less severe." The Defendant's allegations are refuted by the record.

On March 17, 2010, the Defendant, counsel, the State and this Court engaged in a discussion concerning the State's recent plea offer to the Defendant. The Court informed the Defendant that there would not be any plea bargains past Friday. (*See* Transcript of Pretrial Hearing held on March 17, 2010 at 5.) The Court noted that a current plea offer was pending and asked the parties to place the terms on the record "in case it doesn't work out." *Id.* at 6. The State responded by explaining that "It's a, it's filed under 10-20-Life. His minimum mandatory is 20 years, and there are several other cases pending, as well as the second degree tampering with a witness. The State has offered to waive the 10-20-Life and offer 10 years . . . and wrap up everything." *Id.* The Court asked if the Defendant understood the State's offer, and the Defendant acknowledged that he did but he was not interested. *Id.* at 7. The Court then informed him, "You can't complain later if it doesn't work out. I hope it works out for you, but I don't know." *Id.* The Defendant simply responded, "Okay." *Id.*

Even if the Defendant's attorney did not specifically inform the Defendant that the 10-20-Life sentence would be harsher than the 10 year offer by the State, the Defendant cannot demonstrate that he was prejudiced, as the State and the Court explained to the Defendant on the record that his minimum sentence under the law was 20 years in prison.[FN 2: Under section 775.087(2)(a)2., a person who commits an enumerated felony and discharges a firearm during the commission of the felony is subject to the 20 year mandatory minimum. However, the jury in the Defendant's case found that he not only discharged the

firearm, but also inflicted great bodily harm upon the victim, subjecting him to the 25 to Life mandatory minimum under section 775.087(2)(a)3., Florida Statutes.  However, this does not affect the Court's analysis of this claim, as the Defendant has simply stated that had counsel properly advised him that the 10-20-Life statute would result in a harsher sentence, he would have accepted the plea offer of a less severe sentence. In this case, he was advised that he would receive a harsher sentence under the 10-20-Life statute and still refused to accept the plea offer.] The Defendant knew that this mandatory minimum was harsher than the 10 year plea offer by the State and still refused to take the plea deal. Thus, the record refutes the Defendant's allegation that had counsel informed him that the 10-20-Life sentence would have been harsher, he would have accepted the State's plea offer of a less severe sentence. Accordingly, the Defendant's motion is due to be denied as he cannot demonstrate prejudice under *Strickland*.

(Ex. U at 566–67).  The First DCA affirmed the lower court's decision without written opinion (Ex. W).

In Petitioner's reply brief in this § 2254 proceeding, he alleges additional facts which he did not present to the state courts (*see* ECF No. 22 at 19–20).  For example, Petitioner admits that he was aware that he could be sentenced to more than 10 years if he rejected the State's plea offer, but he newly alleges that he was not aware that he could be sentenced to more than 20 years if he rejected the offer (*id.*).  Petitioner additionally alleges he was not informed that the harsher provision of the 10-20-Life statute, which mandated a minimum sentence of 25 years to life, applied (*id.* at 19).  Petitioner also newly alleges that he "took numberous [sic] measures" to contact

defense counsel to accept the State's 10-year plea offer by the court-imposed deadline of Friday, March 19, 2010 (*id.* at 20).  Petitioner alleges he attempted to place a collect call from the jail to counsel's office, but counsel's secretary rejected the call (*id.*).  He further alleges that his family tried to reach defense counsel, but they were told that counsel was not in the office (*id.*).  Petitioner claims he "had know [sic] other choice but proceed to trial" (*id.*).

Where, as here, the federal claim was adjudicated on the merits in state court, review under § 2254(d)(1) is limited to the record that was before the state court.  *See* Cullen v. Pinholster, 563 U.S. ——, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). "If a claim has been adjudicated on the merits by a state court, a federal habeas petition[er] must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  *Id.* at 1400 (footnote omitted).  Likewise, review of a claim under § 2254(d)(2) is specifically limited to "evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Thus, as a general rule, district courts may not expand the record or conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d).  *See* Frazier v. Bouchard, 661 F.3d 519, 528 (11th Cir. 2011) (limiting review under § 2254(d)(1) to record before state court, and refusing to consider expanded record presented to district court); Moore v. Mitchell,

708 F.3d 760, 780–81 (9th Cir. 2013) (federal habeas court could not consider additional evidence not before state courts, even though parties jointly moved to expand the record); Ballinger v. Prelesnik, 709 F.3d 558, 561 (6th Cir. 2013); Brown v. Wenerowicz, 663 F.3d 619, 629 (3d Cir. 2011) (finding Pinholster controlling and holding that the district court erred in conducting an evidentiary hearing).  Therefore, this court will consider only the facts presented to the state courts, and will not consider the new facts presented in Petitioner's reply filed in this § 2254 proceeding.

As the state court found, the transcript of the March 17, 2010, pre-trial hearing refutes Petitioner's allegation that he would have accepted the 10-year plea offer if he had known that he would receive a sentence of more than 10 years under the 10-20-Life statute.

> THE COURT:  And he has had a plea offer, so he needs to know what—let's put on the record what the plea offer is in case it doesn't work out.
>
> MS. STALCUP [the prosecutor]:  Yes, Your Honor.  It's a, it's filed under 10-20-life.  His minimum mandatory is 20 years, and there are several other cases pending, as well as a second degree tampering with a witness.  The State has offered to waive the 10-20-life and offer 10 years—
>
> THE COURT:  Okay.

MS. STALCUP:  —and wrap up everything.  I would not pursue the tampering charge or anything else, strictly the carjacking with aggravated assault and the fleeing and attempting to elude.

THE COURT:  Okay.  Do you understand all that, Mr. Baldwin?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  As long as you heard it, and you're not interested, correct?

THE DEFENDANT:  No, ma'am.

THE COURT:  Okay.  You can't complain later if it doesn't work out.  I hope it works out for you, but I don't know.

THE DEFENDANT:  Okay.

(Ex. U at 589–90).

The state court's factual findings, that the prosecutor and the trial judge informed Petitioner that the mandatory minimum sentence under the 10-20-life statute was harsher than the 10-year plea offered by the State, and that Petitioner still refused to take the plea deal, are supported by the state court record.  Based upon these findings, the state court reasonably concluded that Petitioner failed to show a reasonable probability that he would have accepted the State's plea offer if defense counsel had explained that his sentence under the 10-20-life statute would be more

severe than the State's 10-year plea offer.  Therefore, Petitioner is not entitled to

federal habeas relief on Ground Eight.

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he

district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

A timely notice of appeal must still be filed, even if the court issues a certificate of

appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional

right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct.

1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing)

(citation omitted).  Therefore, the undersigned recommends that the district court deny

a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final

order, the court may direct the parties to submit arguments on whether a certificate

should issue."  Thus, if there is an objection to this recommendation by either party,

that party may bring this argument to the attention of the district judge in the

objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of August 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**